RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0161p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

────────────────

ROBERT CARBONE,

                           *Plaintiff-Appellant*,

        *v.*

WULF KAAL; RAPHAEL BAUMANN; MICHAEL STEUER;
OPEN SOURCE STANDARDS ASSOCIATION;
EMERGING TECHNOLOGY ASSOCIATION; JOHN and JANE
DOES 1–35,

                           *Defendants-Appellees*.

> No. 24-3795

────────────────

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:23-cv-03443—Algenon L. Marbley, District Judge.

Decided and Filed: June 20, 2025

Before: GILMAN, DAVIS, and MATHIS, Circuit Judges.

────────────────

## COUNSEL

**ON BRIEF:** Lindsey E. Sacher, Spencer E. Krebs, TUCKER ELLIS LLP, Cleveland, Ohio, for
Appellant. Kevin T. Shook, Zackary L. Stillings, FROST BROWN TODD LLC, Columbus,
Ohio, for Appellees.

────────────────

## OPINION

────────────────

MATHIS, Circuit Judge. Robert Carbone, who lives in Connecticut, sued two Swiss
organizations and several individuals who live in California, Illinois, and Switzerland for
defamation and other tortious conduct. Carbone was a member of the two Swiss organizations.
He claims that the defendants used websites to publish defamatory statements about him and to

facilitate his removal from the organizations.  He decided to file suit in Ohio.  Why Ohio?  Because the Swiss organizations maintained servers in Ohio that hosted the organizations' websites.  So Carbone's theory is that the allegedly improper statements about him would have passed through the servers in Ohio on the way to their destination.  Nothing else connected any of the parties to Ohio.

The district court dismissed Carbone's complaint for lack of personal jurisdiction.  We affirm.

**I.**

The Emerging Technology Association ("ETA") and the Open Source Standards Association ("OSSA") are Swiss "decentralized autonomous organizations" ("DAOs").  DAOs like ETA and OSSA are "used in the world of cryptocurrency by investors and other players in that field."  R. 32-1, PageID 405.  Wulf Kaal, an Illinois resident, is a co-founder and board member of both ETA and OSSA.  Michael Steuer, a California resident, is also a member of the DAOs and holds majority voting rights for both organizations.  Raphael Baumann, a resident of Switzerland, is a member and president of ETA.  And Defendants John/Jane Does 1-35 are other unknown ETA and OSSA members.

Carbone, a Connecticut resident, was also a member of ETA and OSSA.  But in October 2022, Kaal, Steuer, and Baumann allegedly accused him of engaging in sexual misconduct against ETA's compliance director.  Not only that, Carbone claims they falsely implied to ETA and OSSA members that three law firms investigated his misconduct.  Carbone alleges that ETA and OSSA members voted to remove him from the organizations because of these false statements, resulting in damages.

Carbone sued Defendants in the United States District Court for the Southern District of Ohio for defamation, tortious interference, breach of fiduciary duty, and negligent misrepresentation, invoking the court's diversity-of-citizenship jurisdiction.  Carbone does not contend that he—or any defendant—lives in or even visits Ohio.  Instead, in his complaint, Carbone alleges that the district court could exercise personal jurisdiction over Defendants because they "transacted business in Ohio, engaged in business acts in Ohio and/or caused a

tortious injury through events occurring in Ohio." R. 1, PageID 6. In particular, ETA and OSSA maintain websites with servers located in Ohio.

ETA's website has a portal that allows its members to discuss and vote on business matters. Carbone contends that Defendants used the ETA website to engage in business dealings, publish defamatory statements about him, and vote on his removal from the DAOs. He also asserts that the defamatory statements "had to 'hit' or 'pass through'" the Ohio-based server to reach other members. R. 32-1, PageID 407. As for OSSA's website, Carbone states that members used it to communicate and conduct business activities. And he attests that Defendants "would or should have had access to information regarding the location of the server[s]." *Id.* at 408.

Defendants moved to dismiss Carbone's complaint for, among other reasons, lack of personal jurisdiction. In support of their motions to dismiss, Defendants proffered evidence that third parties selected the server locations for them. Charles Wismer stated that ETA gave him a grant to construct the ETA website. No one directed him to use a server in Ohio, nor did he discuss the server's location with Defendants. Instead, Wismer chose a server in Ohio "based upon cost and [his] experience." R. 11-1, PageID 114. Similarly, OSSA hired a third-party vendor to develop its website. No one at OSSA told the vendor to use an Ohio-based server, and there was "no specific reason" the vendor chose to do so. R. 27-2, PageID 278.

The district court determined that it could not exercise personal jurisdiction over Defendants and granted the motions to dismiss. Carbone now appeals.

**II.**

A plaintiff filing a lawsuit in federal court bears the burden of establishing a prima facie case that the district court can maintain personal jurisdiction over each defendant. *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 437 (6th Cir. 2022). He can meet this initial burden "merely through the complaint." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (citation omitted). This requires "establish[ing], with reasonable particularity, sufficient contacts between the defendant and the forum state to satisfy the relevant long-arm statute and the Due Process Clause." *Id.* (citations omitted).

If the plaintiff makes a prima facie case of personal jurisdiction, the burden shifts to the defendant. *Peters Broad. Eng'g*, 40 F.4th at 437. The defendant must support its motion to dismiss with evidence showing that the district court lacks jurisdiction over it. *Id.*

If the defendant provides such evidence, then the burden shifts back to the plaintiff. *Id.* At that point, the plaintiff "may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* at 437–38 (internal quotation marks omitted). And the plaintiff must establish the district court's jurisdiction "over each defendant independently." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (quotation omitted).

When a district court grants a motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure without conducting an evidentiary hearing, as the court did here, we consider the pleadings and affidavits in the light most favorable to the nonmovant. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017). Moreover, we do not weigh "the controverting assertions of the party seeking dismissal." *Id.* (quotation omitted).

We review de novo the district court's decision granting a motion to dismiss for lack of personal jurisdiction. *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021).

**III.**

By filing an action against Defendants in the district court, Carbone invoked that court's diversity jurisdiction. U.S. Const. art. III, § 2; 28 U.S.C. 1332(a). "When sitting in diversity, a federal court may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so." *Blessing*, 988 F.3d at 901 (citation omitted). As a result, "[a] federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Beydoun*, 768 F.3d at 504 (quotation omitted). Because Carbone cannot show that the exercise of personal jurisdiction over Defendants satisfies due process, we need not consider whether exercising personal jurisdiction would also run afoul

of Ohio's long-arm statute.**¹** *See Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) (conducting the due-process analysis first).

The Fourteenth Amendment's Due Process Clause prohibits "any State" from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Relevant here, it "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (internal quotation marks omitted). Thus, courts may exercise personal jurisdiction over out-of-state defendants only where those defendants have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Personal jurisdiction can be either "general" or "specific." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). General jurisdiction exists when a defendant's relationship with the forum state is "so 'continuous and systematic' as to render [it] essentially at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). On the other hand, specific jurisdiction "arises out of or relates to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (alterations and quotation omitted). Indeed, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (internal quotation marks omitted). For a court to exercise specific jurisdiction over a defendant, a plaintiff must establish a "substantial connection" among "the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Our "primary concern" under either type of jurisdiction "is the burden on the defendant." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 263 (2017) (internal quotation marks omitted).

---

**¹**Although the district court never considered whether exercising personal jurisdiction over ETA and OSSA was appropriate under the Due Process Clause, we can "affirm a decision of the district court for any reason supported by the record, including on grounds different from those on which the district court relied." *Phillips v. UAW Int'l*, 854 F.3d 323, 326 (6th Cir. 2017) (quotation omitted).

Carbone never argued that the district court had general jurisdiction over Defendants. We therefore consider only whether he established specific jurisdiction.

We have long applied a three-part specific-jurisdiction test.  Under that test, the district court's exercise of personal jurisdiction over Defendants would comport with due process if: (1) Defendants purposefully availed themselves of the privilege of acting, or causing a consequence, in Ohio; (2) Carbone's claims against Defendants arise from Defendants' activities in Ohio; and (3) Defendants' actions, or the consequences they caused, have a substantial enough connection with Ohio to make it reasonable for a court in Ohio to exercise jurisdiction.  *See Peters Broad. Eng'g*, 40 F.4th at 441; *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

Because the district court decided Defendants' motions to dismiss without an evidentiary hearing, all Carbone had to do was make a prima facie showing.  *See Malone*, 965 F.3d at 505. He failed to do so.

*Did Defendants purposefully avail themselves of the privilege of acting in Ohio?*  To subject itself to the jurisdiction of a court in a foreign state, a defendant must "purposefully avail[] itself of the privilege of conducting activities within th[at] State, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted).  This "requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."  *Burger King*, 471 U.S. at 475 (internal quotation marks and citations omitted).  Simply put, "[t]he contacts must be the defendant's own choice," *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021), and they must "create a substantial connection with the forum State," *Burger King*, 471 U.S. at 475 (internal quotation marks omitted).  We have described the purposeful-availment component as "the constitutional touchstone of personal jurisdiction." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016) (quotation omitted).

Recall that Carbone contends that Defendants purposefully availed themselves of the privilege of acting in Ohio by maintaining computer servers there—servers that Defendants used

to publish allegedly defamatory statements about Carbone.  Nothing else connects Defendants to Ohio.  They do not reside there, nor do they conduct any other business there.  Defendants counter that maintaining servers in Ohio does not suffice to create a substantial connection with Ohio because, among other reasons, they did not select Ohio as the location for the servers—their agents made that decision.  Defendants have the better argument.

Two Supreme Court decisions guide our purposeful-availment analysis.

In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court "establishe[d] that the effects of intentional torts sometimes may establish personal jurisdiction," *Johnson v. Griffin*, 85 F.4th 429, 433 (6th Cir. 2023), where the "intentional, and allegedly tortious, actions were expressly aimed at [the forum state]," *Calder*, 465 U.S. at 789.  There, the Court found that the defendants—who published an "allegedly libelous story" in a magazine—"expressly aimed" their actions at California.  *Id.* at 788–89.  For one, the "story concerned the California activities of a California resident."  *Id.* at 788.  Plus, the defendants "knew that the brunt of th[e] injury would be felt" in California, where the plaintiff lived and the magazine was widely circulated. *Id.* at 789–90.  The Court thus concluded that a California court had jurisdiction over the out-of-state defendants because California was "the focal point both of the story and of the harm suffered."  *Id.* at 789.

More recently, in *Walden*, the Supreme Court acknowledged the limits of *Calder*'s "effects" test.  The *Walden* defendant seized cash from the plaintiffs at an airport in Georgia and later submitted an allegedly false affidavit against them to federal prosecutors in Georgia.  571 U.S. at 288.  The plaintiffs argued that a Nevada court had personal jurisdiction over the defendant because "he knew his allegedly tortious conduct in Georgia would delay the return of funds to plaintiffs with connections to Nevada."  *Id.* at 279.  The Court rejected this argument, concluding that the defendant had "no jurisdictionally relevant contacts with Nevada," because he "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada."  *Id.* at 289.

We recently applied *Calder* and *Walden* in two cases considering whether allegedly tortious tweets created personal jurisdiction over out-of-state defendants. *See Blessing*, 988 F.3d at 892; *Johnson*, 85 F.4th at 431.

In *Blessing*, the defendants, residents of California and New Jersey, tweeted about Kentucky high school students and their conduct at a rally in Washington, D.C. 988 F.3d at 892–83. We concluded that the defendants did not direct their actions at Kentucky—where the plaintiffs lived—via their tweets. *Id.* at 906. This was because the defendants had no preexisting relationship with the plaintiffs; the tweets did not target Kentucky readers; the plaintiffs never alleged that anyone in Kentucky read the tweets; and the defendants never sought the benefits or protections of Kentucky's laws. *Id.* Therefore, a Kentucky court could not exercise personal jurisdiction over the defendants.

We reached the opposite conclusion in *Johnson*. There, the defendant, who was also a defendant in *Blessing*, sent a series of tweets asserting that a Tennessee CEO "had engaged in homophobic conduct." *Johnson*, 85 F.4th at 431. The "tweets drew [from] a Tennessee source . . . to attack a Tennessee resident for his conduct in Tennessee." *Id.* at 434. Indeed, the tweets mentioned Tennessee directly, identified the plaintiff's Tennessee employer, and allegedly led to the termination of the plaintiff's employment in Tennessee. *Id.* Accordingly, we held that a Tennessee court had personal jurisdiction over the defendant. *Id.* at 435.

The facts of this case more closely resemble *Walden* and *Blessing* than *Calder* and *Johnson*. As in *Walden*, Defendants never visited Ohio or contacted anyone there. *See* 571 U.S. at 289. And like in *Blessing*, the complaint does not allege that anyone in Ohio read the defamatory statements, and Defendants' allegedly tortious actions never targeted anyone in Ohio. *See* 988 F.3d at 906. Unlike *Calder* and *Johnson*, Carbone never asserted that the defamatory statements concerned conduct occurring in Ohio or Ohio residents. Nor did he contend that anyone in Ohio read the statements or that he suffered an injury in Ohio. *See Calder*, 465 U.S. at 789–90; *Johnson*, 85 F.4th at 435. In sum, Ohio was never "the focal point . . . of the story [or] of the harm suffered." *See Calder*, 465 U.S. at 789. As a result, Defendants did not purposefully avail themselves of the privilege of acting in Ohio through their alleged tortious conduct.

Carbone resists this conclusion by arguing that Defendants targeted Ohio by using Ohio-based servers to commit the tortious acts. But mere transmission of information through a server has little, if any, effect in Ohio. *Cf. uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 432 (7th Cir. 2010) (noting that "[w]here [the defendant] chooses to locate the servers that complete the [allegedly tortious act] is irrelevant"); *Silver v. Brown*, 382 F. App'x 723, 732 (10th Cir. 2010) ("The location of . . . the computer server . . . has little practical effect on the damage caused."). All in all, Carbone cannot rely on the effects of Defendants' allegedly tortious actions to establish personal jurisdiction in Ohio.

Carbone also argues, relying on out-of-circuit decisions, that an Ohio court can maintain personal jurisdiction over Defendants based on Defendants choosing to locate website servers there. Under his proposed test, personal jurisdiction exists if Defendants used a server to commit wrongful acts and "'something more' than the mere use of the server [] connects the user to the forum." D. 19 at p.20; *see MacDermid, Inc. v. Deiter*, 702 F.3d 725 (2d Cir. 2012); *Will Co. v. Lee*, 47 F.4th 917 (9th Cir. 2022), *overruled in part by Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) (en banc). He claims that "something more" exists here because Defendants: (1) "would or should have had access to information regarding the location of the server[s]," R. 32-1, PageID 408, and (2) benefited from locating them in Ohio. Carbone's arguments fall short.

Carbone asserts that Defendants had either actual or constructive knowledge that their agents selected Ohio as the location for the servers. Yet even assuming Defendants knew of the servers' location, their use of Ohio-based servers alone fails to create a "substantial connection" between Defendants and Ohio. *See Walden*, 571 U.S. at 284; *see also Carefirst of Md., Inc., v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003) ("[W]e have described as de minimis the level of contact created by the connection between an out-of-state defendant and a web server located within a forum." (internal quotation marks omitted)); *GreatFence.com, Inc. v. Bailey*, 726 F. App'x 260, 261 (5th Cir. 2018) (concluding that "a web server's location alone" did not establish personal jurisdiction "where there is no allegation, argument, or evidence that the defendants played any role in selecting the server's location").

What is more, Carbone failed to establish that Defendants *themselves* created any connections with Ohio. *See Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472,

478 (6th Cir. 2003) (per curiam). Indeed, ETA and OSSA contracted with third parties who independently chose to locate the servers in Ohio.[2] And Carbone neither alleged nor established by affidavit that Defendants themselves chose the server location or sought a financial benefit from locating them in Ohio. Overall, Carbone failed to show that using an Ohio-based server was "[Defendants'] own choice and not random, isolated, or fortuitous," or that Defendants had "fair warning" that the location of a website server "may subject [them] to" Ohio's jurisdiction. *See Ford Motor Co.*, 592 U.S. at 359–60 (quotations omitted).

The cases Carbone relies on from our sister circuits do not persuade us otherwise. In *MacDermid*, the defendant accessed the plaintiff's computer servers to misappropriate confidential information. 702 F.3d at 726–27. The plaintiff sued in Connecticut, alleging that the defendant knew the servers were located there and used them "to send an email which itself constituted the alleged tort." *Id.* at 730. The defendant also directed her tortious activity toward the plaintiff, a Connecticut corporation. *Id.* The Second Circuit thus determined that the defendant purposefully availed herself of the privilege of acting in Connecticut. *Id.* But crucially here, Defendants never directed any tortious activity toward Ohio or its residents. Instead, they directed their allegedly tortious actions at Carbone, a Connecticut resident.

Carbone's reliance on *Will Co.* fares no better. In that case, the Ninth Circuit considered whether computer servers connected a foreign company to the United States under Federal Rule of Civil Procedure 4(k)(2). 47 F.4th at 922, 925. To begin, Rule 4(k)(2) does not apply here—it applies only to federal claims outside of state-court jurisdiction. *See* Fed. R. Civ. P. 4(k)(2). Plus, the minimum-contacts analysis under that rule focuses not on the defendant's contacts with a certain state, but with the United States generally. *Lyngaas v. Curaden AG*, 992 F.3d 412, 422 (6th Cir. 2021). So the Ninth Circuit's conclusion that the defendant targeted the United States by using and benefiting from a U.S.-based server carries little weight here. *See Will Co.*, 47 F.4th at 926.

In the end, viewing the pleadings and affidavits in the light most favorable to Carbone, Defendants never created a substantial connection with Ohio. *See Walden*, 571 U.S. at 284.

---

[2]Because these facts do not conflict with those offered by Carbone, we may consider them. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).

That the alleged defamatory statements traveled through an Ohio-based server establishes only "random, fortuitous, or attenuated contacts" with the State. *Burger King*, 471 U.S. at 475 (internal quotation marks omitted).

*Do Carbone's claims against Defendants arise from Defendants' activities in Ohio?* The arises-from prong of the purposeful-availment test "is subject to a lenient standard." *Schneider v. Hardesty*, 669 F.3d 693, 703 (6th Cir. 2012) (internal quotation marks omitted). It requires only that the cause of action "arise out of or relate to the defendant's contacts with the forum," *Ford Motor Co.*, 592 U.S. at 359 (internal quotation marks omitted). A plaintiff can meet this requirement by showing that the defendant "purposefully direct[ed] communications into the forum, and those communications form the heart of the cause of action." *Intera Corp. v. Henderson*, 428 F.3d 605, 617–18 (6th Cir. 2005) (quotation omitted).

Although Carbone alleges that Defendants transacted business in Ohio, he failed to show that his claims arose from any of Defendants' business transactions. He argues instead that Defendants committed intentional torts, like defamation, through the Ohio-based servers. Yet he does not contend that Defendants wrote the defamatory statements in Ohio; that they directed the statements towards Ohio; or that anyone in Ohio read the statements. Nor does he allege that anyone in Ohio used the website to vote on Carbone's removal from the organizations.

True enough, Carbone declares that the defamatory statements and votes on his removal passed through the Ohio-based servers. Even so, it was not the physical transmittal of information through a server that constituted the allegedly tortious activity. *Cf. MacDermid*, 702 F.3d at 727, 730 (using "servers to send an email [] itself constituted" the tortious actions of "unauthorized access and misuse of a computer system and misappropriation of trade secrets"). Instead, Defendants' actions elsewhere—writing and communicating[3] defamatory statements and facilitating Carbone's removal—"form the 'heart' of the cause of action." *Intera Corp.*, 428 F.3d at 618 (quotation omitted). Carbone thus failed to show that his claims arose from Defendants' connections to Ohio.

---

[3]The act of publishing occurs when others read or hear the defamatory statements. *See Hartman v. Kerch*, 217 N.E.3d 881, 902 (Ohio Ct. App. 2023) ("Publication" occurs "by any act communicating the defamatory matter to a third party."); *see also Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 777 (1984) ("The tort of libel is generally held to occur wherever the offending material is circulated." (citation omitted)).

\* \* \*

In sum, Carbone did not "establish, with reasonable particularity, sufficient contacts between the [Defendants] and the forum state to satisfy . . . the Due Process Clause." *See Malone*, 965 F.3d at 504 (citation omitted). He thus failed to make a prima facie showing of personal jurisdiction. *See Theunissen*, 935 F.2d at 1459 (holding that dismissal is "proper if all of the specific facts [the plaintiff] alleged collectively failed to state a *prima facie* case for jurisdiction under the appropriate standards").[4]

## IV.

For these reasons, we **AFFIRM** the district court's judgment.

---

[4]Because Carbone failed to establish that Defendants purposefully availed themselves of the privilege of acting in Ohio or that Carbone's claims against Defendants arise from Defendants' activities in Ohio, we need not consider whether it would be reasonable for an Ohio court to exercise jurisdiction over Defendants.