**CTC–MINEMET, INC., Plaintiff,**

v.

**GLENS FALLS CEMENT COMPANY, INC., Defendant.**

**Civ. A. No. 89–217.**

United States District Court, E.D. Kentucky, Pikeville.

Dec. 1, 1989.

P. Frank Heaberlin, Francis, Kazee & Francis, Prestonsburg, Ky., Frank P. Shannon, III, Atlanta, Ga., for plaintiff.

Peter D. Fitzgerald, Lapann, Reardon, Morris, Fitzgerald & Firth, P.C., Glens Falls, N.Y., Edward N. Hall, Robinson & McElwee, Lexington, Ky., for defendant.

## ORDER

FORESTER, District Judge.

This matter is before the Court on the motion of defendant to dismiss. This matter was referred to the Magistrate for the purposes of holding a hearing and issuing a report and recommendation. The Magistrate has filed his Report and Recommendation, dated November 7, 1989, suggesting that this matter be dismissed for lack of personal jurisdiction, and the plaintiff has filed objections to the Report and Recommendation.

The Court has made a *de novo* review of the record and agrees with the Magistrate that this Court does not have jurisdiction over the person of the defendant. Specifically, the defendant, incorporated in Georgia with its principal place of business in New York, contracted with Severn Coal Company, a South Carolina company, for supply of coal to the defendant.

The plaintiff, a Delaware corporation with its principal place of business in Connecticut, financed Severn's purchase of coal from Leckie Fuel, Inc., a West Virginia company, to meet the requirements of Severn's contract with defendant. In turn, Leckie Fuel contracted with Revelstone Coal Company, a Kentucky company, for the supply of coal.

The Court agrees with the Magistrate that this is a "contract dispute in which the plaintiff seeks relief for the defendant's refusal to pay according to the contract terms." Furthermore, "the method under which [the contract] was fulfilled follows a tortured path before reaching this jurisdiction." Although this matter has a Kentucky connection, it does not necessarily follow that the defendant is subject to personal jurisdiction within Kentucky. In conclusion, the Court concludes that the Magistrate correctly recommended dismissal of this case for lack of personal jurisdiction over the defendant.

In accordance with the foregoing, it is hereby ORDERED:

1) that the objections of the plaintiff to the Magistrate's Report and Recommendation are DENIED;

2) that the defendant's motion to dismiss is GRANTED, and this matter is DISMISSED;

3) that the Magistrate's Report and Recommendation is ADOPTED as the opinion of the Court; and

4) that this matter is STRICKEN from the docket.

## MAGISTRATE'S REPORT AND RECOMMENDATION

JOSEPH M. HOOD, United States Magistrate.

The defendant, Glens Falls Cement Co. [Glens Falls], has moved the court to dismiss the above-styled complaint for lack of personal jurisdiction in this forum. The plaintiff, CTC–Minemet [CTC], asserts that this court has jurisdiction over Glens Falls because the defendant has "transacted business" in Kentucky sufficient to satisfy the Commonwealth's long-arm statute. The matter has been referred to the undersigned for oral argument and a report and recommendation on the motion. 28 U.S.C. § 636(b)(1)(B).

Glens Falls is a Georgia corporation with its principal place of business in Glens Falls, New York. Glens Falls manufactures cement products for distribution in the New England area. The defendant is not authorized to do business in Kentucky; it does not sell any goods in Kentucky; nor does the defendant have any employees in Kentucky. CTC is a Delaware corporation with its principal place of business in Stamford, Connecticut. CTC is authorized to do business in Kentucky.

Glens Falls requires coal for its manufacturing process, in particular, a quality of coal found in Southeastern Kentucky and some parts of West Virginia. It contracted with Severn Coal, a Charleston, South Carolina corporation, to supply coal meeting certain specifications. An affidavit by a Severn Coal employee states that Severn understood only coal from the Big Sandy area of Kentucky was best for Glens Falls' manufacturing process. [Record No. 6, Plaintiff's Exhibit 1].

Although this was the first contract for Kentucky coal as Glens Falls is presently incorporated, its predecessor corporation, Glens Falls Portland Cement, had received shipments of coal from Kentucky for at least five years prior to the subject contract. However, there is no evidence that those purchases were made directly with Kentucky coal suppliers. Glens Falls has a shipping contract with CSX railroad. As part of the contract between Severn Coal and Glens Falls, the coal was to be delivered to the CSX shipping facility in Paintsville, Kentucky for delivery to Glens Falls, New York.

CTC financed Severn Coal's efforts under the subject contract with Glens Falls. To fulfill the contract, Severn purchased the coal through Leckie Fuels Corporation of Charleston, West Virginia, who acted as sales agent for Revelstone Coal Company in Paintsville, Kentucky. Revelstone supplied the coal shipped to Glens Falls. [Record No. 6, Plaintiff's Exhibit 2 (Affidavit of Masten H. Loughman, Jr.)]. Mineral Labs, a Kentucky company, apparently tested the coal for the contract specifications before it was shipped from Paintsville. The underlying dispute in this action is over Glens Falls refusal to pay for the coal because it allegedly did not meet the required specifications. The plaintiff demands payment of the contract price.

Two relevant cases are relied upon by both parties. The first, *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir.1968), sets out a three-prong test for determining personal jurisdiction over a non-resident: whether the non-resident purposefully availed itself to the forum state; whether the cause of action arises from the defendant's activities there; and, whether the acts of the defendant or consequences of its acts have a substantial connection with the forum to make the exercise of jurisdiction "reasonable."

The other case, *Tube Turns Div. of Chemetron v. Patterson Co.,* 562 S.W.2d 99 (Ky.App.1978), applied the *Southern Machine* analysis. The Kentucky Court of Appeals held that a non-resident buyer who

places one order with a Kentucky seller upon the seller's solicitation and at the seller's advertised terms did not result in a sufficient contact to establish personal jurisdiction in Kentucky over the non-resident.

The defendant argues that the coal contract with Severn only incidentally involved Kentucky and that its refusal to pay is of very little consequence in this forum.[1] Thus, Glens Falls contends that *Tube Turns* is nearly on point with this action—a seller seeking *in personam* jurisdiction in Kentucky over a non-resident buyer. Moreover, the defendant points out that the plaintiff is only remotely related to this forum, unlike the seller in *Tube Turns.*

The plaintiff claims that the defendant's receipt of Kentucky coal for five years and its specific demand for only Kentucky coal show that Glens Falls has "transacted business" in Kentucky sufficient for personal jurisdiction. *See* KRS 454.210(2)(a). CTC urges that this forum meets the *Southern Machine* test because Glens Falls specifically demanded its supplier to do business here; the testing for specifications and any failure to meet them occurred here; and, the refusal to pay has harmed a company authorized to do business in Kentucky. Further, CTC points to the shipping arrangement with CSX as indicating the defendant's "purposeful" contacts with Kentucky.

One point must be emphasized at the outset—this is a contract dispute in which the plaintiff seeks relief for the defendant's refusal to pay according to the contract terms. It is only by way of defense that any question arises about the coal. The contract was not entered into in Kentucky and the method under which it was fulfilled follows a tortured path before reaching this jurisdiction.

If the defendant had raised some other defect in the plaintiff's performance under the contract, Kentucky would clearly have no jurisdiction. The plaintiff's position is that, regardless of where the contractual relationship arose or where the parties are

located, Kentucky is a proper forum if the subject of the contract specifically calls for a Kentucky product. Solely on that basis, CTC argues that a non-resident buyer has "transacted business" in this forum.

■ The specific demand by an out-of-state buyer to an out-of-state seller for a Kentucky product cannot, alone, confer jurisdiction in this forum. Such reasoning stretches the concept of "minimum contacts" too thin. For example, Bloomingdale's is a New York seller of "genuine Kentucky crafts", goods which can, of course, only be produced in Kentucky. Assume Bloomingdale's purchases the crafts through a South Carolina wholesaler. That wholesaler, in turn, buys the goods from a Charleston, West Virginia distributor who actually purchases the crafts from producers in Floyd County, Kentucky. Under the plaintiff's reasoning, Bloomingdale's could be sued in Kentucky for breach of its wholesaler contract.

This result is untenable. The plaintiff's theory would subject buyers to personal jurisdiction in every forum from which their independent suppliers must, by necessity, obtain goods. Every forum from which a good necessarily must be purchased, such as California redwood, Georgia peaches, or Kentucky bourbon whisky, would also have a monopoly on contract actions involving those products, regardless of what course the actual consumer undertook to get the good. Such a result in simply not consistent with the notions of "minimum contacts" developed since *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

In *Tube Turns,* the buyer *directly* contacted and made a purchase of goods from a seller actually located in Kentucky, yet the court found no personal jurisdiction over the buyer. Here, the defendant never engaged in a direct effort to do business in Kentucky. No employees or agents ever physically entered Kentucky to negotiate contracts or to solicit business. Moreover,

---

1. Glens Falls has, since the filing of this action, instituted a separate action in the United States District Court for the Northern District of New York against Severn Coal, CTC, and other companies involved under this contract.

the plaintiff, by counsel, admitted at oral argument that this contract *could* have been satisfied by using coal from West Virginia.

The plaintiff points to the long-standing series of Kentucky coal shipments by Glens Falls' predecessor corporation and to the likelihood that such shipments will occur in the future. Any "series" of business transactions was, however, with various suppliers of coal in other jurisdictions. Those suppliers, including Severn, financed and obtained coal *independent* of any participation by Glens Falls.

The contacts established by "transacting business" were well demonstrated in *Southern Machine*. There, the defendant contemplated entering a long continuing licensing agreement for goods from the plaintiff's sole manufacturing plant, which was located in the forum state. The business relationship was clearly direct and of a substantial impact on the forum. Glens Falls demand that its independent suppliers obtain coal from Kentucky or West Virginia does not demonstrate a similar impact. Rather, the buyer having effect on this forum is the one actually entering the market, negotiating a sale, and paying the seller's price. There is no indication in this action of any harm from those activities. The Kentucky-based seller in this case apparently has been paid and it has suffered no harm by the defendant's alleged breach.

The plaintiff argues that if the court fails to recognize personal jurisdiction over the defendant, such a result would allow buyers who frequently purchase goods from a particular location to avoid personal jurisdiction there by simply engaging a middleman in the process. What the plaintiff ignores is that the defense in this case concerns whether such a "middleman" met its contractual duties, i.e., whether the coal supplied met the requisite qualifications. The source of that coal is immaterial. Although any failure of the coal to meet contract specifications may eventually have some bearing on this jurisdiction [2], that pro-spective effect is not a part of the plaintiff's complaint against Glens Falls.

Accordingly, the undersigned recommends that the defendant's motion to dismiss for lack of personal jurisdiction in this forum be granted.

Particularized objections to this Report and Recommendation must be filed within ten (10) days of the date of service of the same or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.1984), *aff'd*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Holbrook*, 794 F.2d 1152, 1154–55 (6th Cir.1986). A party may file a response to another party's objections within ten (10) days after being served with a copy thereof. Rule 72(b), Fed.R.Civ.P.

This the 7th day of November, 1989.

---

**2.** It is questionable whether Severn/CTC could bring action against the West Virginia supplier in this forum for the reasons expressed herein concerning Glens Falls.