**Paul J. MONOHON, Plaintiff,**

v.

**SMITH & LOVELESS DIVISION, UNION
TANK CAR COMPANY, Defendant.**

Civ. A. No. 29763.

United States District Court,
E. D. Michigan, S. D.

June 2, 1972.

Robert J. Lord, Fair Haven, Mich.,
Wilson M. Jackson, Roseville, Mich., for
plaintiff.

Laurence M. Scoville, Jr., Clark, Klein,
Winter, Parsons & Prewitt, Detroit,
Mich., for defendant.

## OPINION

FEIKENS, District Judge.

Plaintiff, Paul J. Monohon, instituted
this suit in the Circuit Court for Oak-
land County, Michigan. It was removed
to this court upon petition by defendant,

the Smith & Loveless Division of the Union Tank Car Company (hereinafter referred to as "S & L"). Monohon contends that S & L tortiously interfered with plaintiff's "personal fiduciary business relations" with one James E. Foyle. More specifically, Monohon contends that S & L induced Foyle to violate fiduciary duties owed by Foyle to Monohon.

■ Since this case was removed to this court on the grounds of diversity of citizenship, Michigan law controls. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "The essence of diversity jurisdiction is that a federal court enforces State law and State policy." Singleton v. Atlantic Coast Line Railroad Co., 20 F.R.D. 15, 18 (E.D.Mich.1956), citing Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed 832 (1947). Neither the parties nor this court's own research has revealed any instance wherein Michigan courts have recognized a tort cause of action such as is claimed here. The lack of precedent is, however, not dispositive. "It has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide even questions of state law when necessary to the rendition of a judgment." Mach-Tronics, Incorporated v. Zirpoli, 316 F.2d 820, 824 (9th Cir. 1963), citing Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943).

Were it necessary, this court would not hesitate to find a cause of action such as that which plaintiff urges:

"The ultimate rationale of the plaintiff's threshold tort theory is that the Anglo-American courts created the personal fiduciary business relations of coadventurers and copartners and that it is unthinkable that the Michigan Supreme Court, if faced with the same action, would not protect the continuity of the coadventurer or copartner fiduciary business relations from tortious interference." [1]

In its essentials, it might be said that the tort would be denominated as one of intentional inducement of non-continuance of a fiduciary duty.

Plaintiff relies, for the theoretical basis of his claim, on IV Restatement of the Law, Torts, Section 766. [2] It should be noted at the outset that the Restatement of the Law Second, Torts (Tentative Draft No. 14) in Division Nine, "Interference with Business Relations" (Topic 2, Inducing Breach of Contract or Refusal to Deal) divides the previous Section 766 into three separate sections.[3]

---

1. Plaintiff's Supplementary Trial Brief, p. 3 (undated).

2. § 766. General Principle. Except as stated in Section 698, one who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby.

3. § 766. *Intentional Interference with Contract:*
   (1) One who intentionally induces or otherwise intentionally causes a third person not to perform a contract with another, other than a contract to marry, is subject to liability to the other for pecuniary loss resulting from the breach of contract.
   (2) One who intentionally prevents another from performing his contract with a third person, other than a contract to

marry, or makes his performance of the contract more expensive, is subject to liability to the other for pecuniary loss resulting to him.
   § 766A. *Intentional Interference with Prospective Contracts:*
   One who purposely induces or otherwise purposely causes a third person not to enter into or continue a prospective contractual relation with another, other than that of a contract to marry, is subject to liability to the other for loss of the benefits of the relation.
   § 766B. *Negligent Interference with Contract or Prospective Relation:*
   (1) Except as stated in subsection (2), and in the case of bodily harm to a servant, there is no liability for pecuniary harm caused by
   (a) Negligent interference with the performance of a contract, or
   (b) Negligently causing a third person not to enter into or continue a business

None of these newer sections, it should be noted, contains such general language (as does the older section) that would as easily enable plaintiff to bring this cause of action within the ambit of the section.

The facts are as follows:

Foyle and Monohon—as a partnership or joint venture (for the purposes of this lawsuit it is immaterial which it is; Michigan courts have held that the fiduciary duties are parallel, Van Stee v. Ransford, 346 Mich. 116, 77 N.W.2d 346 (1956)—entered into a sales representation agreement with S & L (Plaintiff's Exh. 1) on July 15, 1964. The enterprise was to sell defendant's products in Michigan. The enterprise (F & M Company) became one of defendant's high-volume sellers. Despite this, S & L felt that plaintiff was not devoting enough of his time to the business of selling its products. Further, in the words of David Baldwin, Regional Manager for S & L, "We at Smith & Loveless have known that there was a conflict of interests within the Foyle & Monohon Company." (Plaintiff's Exh. 6). There apparently were personality conflicts as well.

The ultimate result of these problems was that Foyle, on or about January 29 1966, verbally notified Monohon that he was withdrawing from the partnership. In a memo dated January 28, 1966, Foyle notified S & L of his resignation from the enterprise. The message is stamped, "Received, February 1, 1966, Smith & Loveless." On February 1, 1966, a telegram signed by Art Parchen (at that time, according to his deposition, Executive Vice-President of Smith & Loveless Division), was sent to Foyle & Monohon Company. "This is notification of cancellation of our sales agreement to Foyle & Monohon Company effective this date. Letter follows." (Plaintiff's Exh. 5). A letter dated February 4, 1966, did follow, confirming the cancellation (Plaintiff's Exh. 6). The letter stated: "Per our sales agreement the termination date is within 30 days, or March 2, 1966, unless you both advise otherwise."

Subsequent to the withdrawal from the enterprise by Foyle, it is clear that both Foyle and Monohon attempted to obtain, each for himself, the S & L account. S & L considered both men for the position of Sales Representative. On February 15, 1966, S & L notified each man, by separate letter, that Foyle was the company's choice for the position. On March 3, 1966, a sales representation agreement was executed between S & L and the J. E. Foyle Company. This agreement, except for the parties, was substantially identical to the one executed July 15, 1964.

Monohon subsequently sued Foyle for an accounting as to their business relationship in the Circuit Court for Oakland County, Michigan. Beer, J., issued two judgments in that case, No. 25406. (Plaintiff's Exh. 15 and Defendant's Rebuttal Exh. 2).[4]

or other advantageous relation with another.

(2) A public utility which negligently transmits or fails to transmit a message, and has reason to expect that such negligence will interfere with the formation or performance of a particular contract, is subject to liability to the sender or addressee of the message for the pecuniary loss resulting from such interference.

4. "This cause having come on to be heard on February 2, 1971, the date set for trial in this matter, and opening statements having been made in open Court by both parties, and both parties having submitted to the Court stipulation as to certain facts in controversy, and witnesses for both sides having testified as to certain facts in controversy, and both parties having waived final argument herein, and this Court having found that the plaintiff did not sustain his proofs,

"IT IS HEREBY ORDERED AND ADJUDGED that the defendant shall be awarded judgment of no cause for action, and that costs shall be awarded to neither party." Judgment dated March 9, 1971.

"This cause having come on for trial upon the pleadings and certain stipulated facts and testimony of the parties hereto; and this Court having found the fact and made the conclusion of law thereon that

Plaintiff's complaint in the present case contends:

"... as a consequence and by reason only of the defendant's said inducements and purposes and course of conduct by its agents ... the defendant did rescind said ... agreement ... and did reform, renew and continue the same said agreement with said James E. Foyle ... so that then and thereafter he carried on ... the same said exclusive territorial sales representative business for defendant ... as was formerly carried on by said Foyle and Monohon Company but only in his individual name or as the J. E. Foyle Company." (Complaint, p. 11).

Plaintiff, if the pleadings alone are considered, would appear to be attempting to formulate a cause of action similar to that recognized in Castle v. Marks, 50 App.Div. 320, 63 N.Y.S. 1039 (N.Y. 1900). The facts, however, do not support such a theory. The defendant in that case, after withdrawing from the partnership, renegotiated the company's then-existing contracts for his own benefit. This the court found to be tortious conduct. As language cited in plaintiff's brief demonstrates, the court, in *Castle,* based its decision on the fact that the defendant renegotiated then-existing contracts for his own benefit:

"As to contracts of the firm then existing and remaining unperformed, he remained—until such contracts had been fully completed—under the same obligation to the firm and his copartner that he did theretofore." [5]

It thus can be seen that the *Castle* case is inapposite.

Plaintiff, in any case, abandoned this line of reasoning on final argument. Now plaintiff defines the tort as being the defendant's inducement, or purposeful causing without justification, of Foyle not to continue his fiduciary relationship with Monohon. Plaintiff concedes that the partnership was terminable at will and that its termination did not, per se, constitute the cause of action. Plaintiff contends that when an enterprise (whether partnership or joint venture) is dissolved, the fiduciary duty continues as long as there is partnership subject matter in existence. Plaintiff argues that the signing of the contract by Foyle and S & L on March 3 was the breach (or non-continuation) of Foyle's fiduciary duty to Monohon, thirty or more days after February 4 not having elapsed when the letter notifying Monohon of the termination of the sales representation agreement was sent; that this thirty-day period is mandated by Section V, Paragraph D, of the sales representation agreement and that S & L induced Foyle not to continue this fiduciary duty by offering him the new sales representation agreement. Plaintiff argues that S & L had no right to deal with Foyle until the expiration of a thirty-day period after the notification of the termination of the agreement.

This court cannot agree with plaintiff's contentions.

■ It is the finding of this court that plaintiff, under the facts proven, has not established a cause of action under Michigan law and is, thus, not entitled to recovery of either compensatory or exemplary damages.

The lack of precedent, as stated above, is not controlling but it is entitled to some weight. Plaintiff, while citing cases from other jurisdictions that are arguably on point, cites no applicable Michigan authority as to the threshold issue of this case.

"IT IS ORDERED AND ADJUDGED that the defendant be and he is hereby awarded judgment of no cause for action without costs." Judgment dated March 17, 1972.

the joint adventure or partnership business relations between plaintiff Paul J. Monohon and defendant James E. Foyle were terminated on January 29, 1966, and that plaintiff may have no recovery against defendant either on equitable or on legal principles; and the Court being fully advised in the premises;

5. Plaintiff's Supplementary Trial Brief, p. 22 (undated).

It appears somewhat incongruous that plaintiff contends that defendant did "induce or purposely cause said Foyle not to continue his said personal fiduciary business relations" with plaintiff by causing the ousting of the plaintiff from the business by means of a course of conduct in secret, when plaintiff, during the very same time period, was himself negotiating with Smith & Loveless for the sales representative position for himself. (Plaintiff's Exh. 4). While this suit is denominated as a legal action, it is based on fiduciary duties created, as plaintiff notes, by Anglo-American courts of conscience and thus has equitable overtones. An elementary equitable rule—sometimes known as the "clean hands doctrine"—is that he who seeks equity must do equity. After actively seeking the position for himself and negotiating with S & L, one wonders whether Monohon would be as determined to guard "fiduciary duties" had he been chosen by defendant as its representative.

Plaintiff's counsel, during final argument, advanced the proposition that in a relationship such as this the "venturers" are forbidden by fiduciary ties from negotiating for the contract and S & L is forbidden, by knowledge of the fiduciary ties, from negotiating with either. Again plaintiff's own conduct convinces this court that he is not entitled to recovery. Even were his contentions as to the duties of the parties accepted, plaintiff is equally as guilty of misconduct as any of the others involved.

■■ This court will not, as it is convinced the Michigan courts would not on these facts, impose a duty of strict liability on S & L not to deal with Foyle. Aside from Monohon's own conduct, the fiduciary duty, if any, was Foyle's, not defendant's, and Foyle is not a party to this action. The responsibility for protecting the fiduciary ties should belong to those who are charged with the fiduciary duties, Foyle and Monohon.

This court has noted that the Circuit Court for Oakland County, Michigan, has decided that "the joint adventure or partnership business relations between plaintiff Paul J. Monohon and defendant James E. Foyle were terminated on January 29, 1966, and that plaintiff may have no recovery against defendant either on equitable or on legal principles. . . ." Two possible results flow therefrom: first, that this terminated the sales representation agreement by operation of law, regardless of the later notice by telegram and letter, Menenberg v. Carl R. Sams Realty Company, Inc., 337 Mich. 143, 59 N.W.2d 125 (1953), Wheaton v. Cadillac Automobile Co., 143 Mich. 21, 106 N.W. 399 (1906). Plaintiff's argument that the thirty-day period provided for in the agreement had not lapsed (and that during the thirty days the fiduciary duties continued) would be, if this rule were dispositive, moot; and secondly, that the Oakland County judgment would be res judicata in the present case and that, resultantly, this court would be precluded from finding that a fiduciary duty was violated. Both of these arguments are very persuasive and would convince the court were it not for grounds which obviate the necessity of deciding the case on these points.

In basing his action on Section 766 of the Restatement and by incorporating the language included therein, plaintiff has, as a result of his proofs, made recovery impossible.

■■ As noted above, Section 766 is in the process of being substantially modified in The Restatement of the Law, Second. In the newer formulation it is much clearer that the tort is one that applies only to interference with contract or prospective advantage, not with fiduciary relations or "continuing business relations." Thus, it is the opinion of this court that Section 766 is not applicable to the case at bar. It is conceded that this is not a breach of contract action and there is no prospective advantage since, at most, plaintiff argues that defendant and Foyle signed the agreement a few days prior to the

expiration of the prior one. The "prospective advantage" conferred by the bare remainder of a thirty-day winding-up period after a contract cancellation does not fall within the ambit of this section.

Even assuming plaintiff's alleged cause of action fell within the protection of this section, the plaintiff misconstrues the import of "induces or. purposely causes." (See complaint, p. 4, and Restatement, Torts, p. 54, comment d.). This language does not impose strict liability. "The rule stated in this section applies to any purposeful causation whether by inducement or otherwise. The essential thing is the purpose to cause the result." IV Restatement of the Law, Torts, § 766, pp. 54–55. Plaintiff has made no showing that defendant's purpose was to cause the harm alleged, i. e., non-continuance of fiduciary ties. Defendant, on the other hand, has shown that it would have preferred the partnership to continue and the partners to resolve their differences. Once it became clear that this was impossible, defendant was forced to choose and chose Foyle. (This could also constitute justification, another issue this resolution means the court need not face). The Restatement Second (Tentative Draft No. 14) states the proposition even more forcefully substituting "intentional" for "purposeful" and "intent" for "purpose." Tentative Draft No. 14, § 766, p. 41. Sayre, writing in the Harvard Law Review (and cited by plaintiff) notes this distinction between "procuring or inducing" and "incidentally causing." "Inducing Breach of Contract," 36 Harvard Law Rev. 663 at 678 (1923). Recent case law on Section 766 is in accord. Birl v. Philadelphia Electric Co., 402 Pa. 297, 167 A.2d 472 (1960).

Bahr v. Miller Brothers Creamery, 365 Mich. 415, 112 N.W.2d 463 (1961), in addition to indicating a trend to require intent, clearly requires "active solicitation and instigation of the breach on the part of defendants." At 425, 112 N.W.2d at 468. In *Bahr*, as well as the present case, it appears that the defendants tried to heal an existing division rather than to instigate a breach or non-continuation.

Finally, plaintiff has not proven that defendant rescinded, reformed and renewed the July 1964 agreement, but with Foyle and without Monohon. This court holds that the March agreement with Foyle was a new agreement and not in any way a rescission and reformation of the prior agreement. It should be well known to one with Monohon's business experience that firms often use the same or similar language on otherwise unconnected documents. Accordingly,

It is the order and judgment of this court that this plaintiff's complaint be, and the same is, hereby dismissed.