**FLORISTS' TRANSWORLD DELIVERY, INC., A Michigan corporation, and Interflora, Inc., A Michigan corporation Plaintiffs,**

v.

**FLEUROP–INTERFLORA, a Swiss corporation, Fleurop–Interflora European Business Community AG, a Swiss corporation, Ludwig Angeli, an individual; Ingolf Markussen, an individual; Co Torbijn, an individual; Walter Gossi, an individual; Felix Hazak, an individual; and Jan Johannison, an individual, Defendants.**

No. 01–CV–70954.

United States District Court,
E.D. Michigan,
Southern Division.

April 10, 2003.

Richard A. Gaffin, Miller, Canfield, Detroit, MI, Clarence L. Pozza, Jr., W. Scott Turnbull, Miller, Canfirld, Detroit, MI, Neil D. Greenstein, TechMark, San Jose, CA, for Defendants.

Mark A. Cantor, Thomas W. Cunningham, Brooks & Kushman, Southfield, MI, James Y. Rayis, T. Joshua Archer, Meadows, Ichter, Atlanta, GA, for Defendants.

### MEMORANDUM OPINION & ORDER

HOOD, District Judge.

#### I. *Introduction*

This matter is before the Court on Defendants' Motion to Dismiss the Second Amended Complaint pursuant to Fed. R.Civ.P. 12(b)(2) and Fed.R.Civ.P. 12(b)(6). Florists' Transworld Delivery, Inc. (FTD)

and Interflora, Inc. (Interflora) allege the following: (1) claims for usurpation of corporate opportunity; (2) claims against certain Interflora officers and directors for breaching duties owed to Interflora and for usurping corporate opportunities; (3) claims of entitlement to injunctive relief under the relevant trademark laws; and (4) related state claims. Defendants seek to dismiss seven of Plaintiffs' fourteen counts of liability set forth in their Second Amended Complaint: Count I—Request for Declaratory Relief; Count V—Michigan Consumer Protection Act Claim; Count IX—Interference with FTD's Advantageous Business Relations; Count XI—Inducement to Breach Fiduciary Duties; Count XII—Breach of Fiduciary Duties; Count XIII—Diversion of Corporate Opportunity; and Count XIV—Breach of Contract.[1] In addition, Defendants assert that this Court does not have personal jurisdiction over Defendant, Fleurop–Interflora European Business Community AG (EBC), or over the individually named Defendants; and accordingly, they should be dismissed from this lawsuit.

## II. Background

### The Parties

#### Plaintiffs

FTD, a Michigan corporation, provides florist association services and floral delivery services to North and South America and areas in the Far East, including, Japan, South Korea and Taiwan. Interflora is a Michigan corporation jointly and equally owned by FTD and the entity Defendants. Interflora provides international services to each of the entity Defendants, Defendants' national florist association members and their individual member florists.

#### Defendants

Fleurop–Interflora (Fleurop) is a Swiss corporation which provides florist association services and floral delivery services in Continental Europe, specific countries in Eastern Europe and certain sections of the Near East and Far East including Israel and Thailand. EBC is also a Swiss corporation which provides florist association services and floral delivery services in the British Isles, certain African countries, Australia and New Zealand and other areas formerly associated with the British Commonwealth and the Republic of China.

Plaintiffs maintain that Felix Hazak, Jan Johannisson, Walter Gossi, Ludwig Angeli, Ingolf Markussen and Co Torbijn are members of the Board of Directors of Interflora (who also represents Defendant Fleurop) (Plaintiffs' Second Amended Complaint, ¶ 24). Plaintiffs allege that these Defendants have made and continue to make material decisions relative to management and financial affairs, including the use of the INTERFLORA Mark (Mercury Man Emblem (Mark)). (Plaintiffs' Second Amended Complaint, ¶¶ 24, 43).[2]

1. Count XIV is Breach of Contract in Plaintiffs' Second Amended Complaint. However, within the text of Defendants' Motion and Brief, Count XIV is referred to as Diversion of Corporate Opportunity, which is also Count XIII of Plaintiffs' Second Amended Complaint. Since Defendants do not address dismissal of the breach of contract claim substantively, it could be assumed that the drafter of the pleadings made an error.

2. Plaintiffs' Complaint does not discuss the current status of the individual members of the Board (present or former members).

However, Defendants have attached affidavits from each of the Board members to show that this Court has no personal jurisdiction over the parties. It is within these affidavits that Defendants reveal that Board members Hazak, Johannison, Gossi and Angeli did not become members of the Board until after Plaintiffs' initial lawsuit was filed. (Defendants' Brief in Support of Partial Motion to Dismiss Second Amended Complaint, Exhibits A–C and E) Defendants state in their Brief that Board members Markussen and Torbijn are no longer on the Board. (Defendants'

### III. Statement of Facts

Plaintiffs allege that a written licensing agreement was entered into with Fleurop and EBC whereby FTD was to be the exclusive licensee of the Mark in FTD's assigned *territory. (Plaintiffs' Second Amended Complaint, ¶¶ 26–27 & Plaintiffs' Response Brief in Opposition to Defendants' Partial Motion to Dismiss Second Amended Complaint, Exhibit 2).* It is further alleged that the licensing agreement also allowed interflora, EBC and Fleurop to use the Mercury Man Mark in defined territories in connection with the services described in the license agreement. *(Plaintiffs' Second Amended Complaint, ¶ 29).* Plaintiffs' claim arises from their assertion that Defendants began operating an internet website using the domain names *www.interflora.com* and *www.fleurop-interflora.com*, the establishment of which was done without the consent or permission of Plaintiffs. *(Plaintiffs' Second Amended Complaint, ¶ 33).* The establishment of the internet website allegedly incorporates the Mark as part of the domain name, which apparently allows worldwide access to each of these internet websites without territorial restriction. *(Plaintiffs' Second Amended Complaint, ¶¶ 34–35)* As a result of Defendants' alleged actions, it is Plaintiffs' position they have been and continue to be deprived of the use of their Mark. *(Plaintiffs' Second Amended Complaint, ¶¶ 35–39).* Moreover, business opportunities, otherwise belonging to Interflora, have been and continue to be diverted. *Id.*

### IV. Standard of Review

The party seeking to assert personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) bears the burden of demonstrating that such jurisdiction exists. *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir.2002). When, however, a district court rules on a jurisdictional motion to dismiss made pursuant to Rule 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiffs. *Theunissen v. Matthews,* 935 F.2d 1454, 1458–59 (6th Cir. 1991) To defeat such a motion, a party in Plaintiffs' position need only make a prima facie showing of jurisdiction. *Id.*

Furthermore, a "court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal," because the court wants "to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Id.* at 1459. Dismissal in this procedural posture is proper only if all the specific facts which the Plaintiffs allege collectively fail to state a prima facie case for jurisdiction. *Id.*

Pursuant to Fed.R.Civ.P. 12(b)(6), this Court must construe the Plaintiffs' Second Amended Complaint in the light most favorable to the Plaintiffs, accept all the factual allegations as true, and determine whether Plaintiffs can prove a set of facts in support of its claims that would entitle it to relief. *See, Mayer v. Mylod,* 988 F.2d 635, 637–38 (6th Cir.1993). This Court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir.1990).

However, Defendants have attached seven affidavits from the individually named Defendants and from the general manager of EBC and Fleurop. Plaintiffs have also attached declarations and other documentation in support of their position. "If, on motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the

*Brief in Support of Partial Motion to Dismiss* *Second Amended Complaint, pg. 8).*

motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Fed.R.Civ.P. 12(c)*.

Pursuant to Fed. R.Civ. P. 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R.Civ.P. 56(c)*.

A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties.

*Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). In evaluating a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmovant, as well as draw all reasonable inferences in the nonmovant's favor. *U.S. v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *Gregg v. Allen–Bradley, Co.*, 801 F.2d 859, 861 (6th Cir.1986). "This burden may be discharged by showing ... that there is an absence of evidence to support the nonmoving parties' case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. *Gregg, supra*, 801 F.2d at 861. To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue.

As the U.S. Supreme Court stated, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If the [nonmovant's] evidence is merely corroborative or is not significantly probative, summary judgment may be granted." *Id.* However, the evidence must be more than the nonmovant's own pleadings and affidavits. *CNA Insurance Company v. Allstate Insurance Company*, 36 F.Supp.2d 957 (E.D.Mich.1999).

## V. Applicable Law & Analysis

### Limited Personal Jurisdiction

#### Individually Named Defendants

Defendants initially maintained that this Court lacked limited personal jurisdiction over the above named Defendant Board members for reasons set forth in their affidavits. *(Defendants' Brief in Support of Partial Motion to Dismiss Second Amended Complaint, Exhibits A–F)*. It was also Defendants' position that this Court did not have limited personal jurisdiction over EBC because Plaintiffs' Second Amended Complaint makes no specific allegations against EBC. Defendants filed a Reply Brief in Support of their Partial Motion to Dismiss. Within that pleading, Defendants partially withdrew their claim for lack of personal jurisdiction of the individually named Defendants.

Defendants allege that the Board members: (1) have never had any physical presence in Michigan; (2) have never telephoned or sent a facsimile to Michigan; and (3) have never entered into any contracts for business purposes in Michigan. *Id.* Additionally, Defendants maintain that the fiduciary shield doctrine is applicable

in this case, thereby precluding this Court's exercise of limited personal jurisdiction over the subject Defendants. Plaintiffs contend that this Court may properly exercise personal jurisdiction over the individual Defendants under the Michigan long-arm statute.

Michigan's long-arm statute provides for limited personal jurisdiction over nonresident individuals under certain circumstances. *MCL § 600.705; MSA § 27A.705* The statute provides in pertinent part:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> ■ (6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within the state.

*Id.* However, whether jurisdiction under the statute attaches in a particular case requires a determination of whether the exercise of limited personal jurisdiction violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 954 F.2d 1174, 1176–77 (6th Cir.1992).

■ Due process under the Fourteenth Amendment requires that the defendant have sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). A three-part inquiry has developed to determine whether a nonresident defendant has sufficient minimum contacts with Michigan to support the exercise of limited personal jurisdiction.

■ First, the defendant must have purposely availed himself of the privilege of conducting activities in Michigan, thus invoking the benefits and protections of this state's laws. *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir.1968). Second, the cause of action must arise from the defendant's activities in Michigan. *Id.* Finally, the defendant's activities must have a substantial enough connection with Michigan to make the exercise of jurisdiction over the defendant reasonable. *Id.* An important factor bearing upon the reasonableness of exercising personal jurisdiction is whether the defendants' conduct and connection with Michigan are such that they would have reasonably anticipated being haled into court here. *Rainsberger v. McFadden,* 174 Mich.App. 660, 663, 436 N.W.2d 412 (1989); *McGraw v. Parsons,* 142 Mich. App. 22, 26, 369 N.W.2d 251 (1985).

■ Defendants claim that the only connection these Defendants have with Michigan is their status as directors with a Michigan corporation, FTD, since they have never had any presence in Michigan physically, by mail, by facsimile, by telephone or by contract. The Court finds that these factual arguments are insufficient to support a basis for denying the exercise of personal jurisdiction over these Defendants. First, the Michigan long-arm statute clearly provides in subsection six that having the status of an officer or a board member is a sufficient relationship to have with a corporation, which is incor-

porated under the laws of Michigan, to sustain the exercise of limited personal jurisdiction. Second, "[p]hysical presence is not the touchstone of personal jurisdiction." *Neal v. Janssen,* 270 F.3d 328, 333 (6th Cir.2001)

It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications [and electronically] across state [and national and international] lines, thus obviating the need for physical presence within a State when business is conducted.

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The fact that the Defendant Board members alleged that they have no "presence" in Michigan does not negate the fact that they still have the required minimum contacts with this state.

Third, the Court finds Defendants' argument that the Defendant Board members are somehow protected from this Court's exercise of personal jurisdiction pursuant to the fiduciary shield doctrine unpersuasive. The doctrine states as follows:

[I]f an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct.

*Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899 (2nd Cir.1981). The U.S. Supreme Court, this Circuit and this District reject the proposition that the exercise of limited personal jurisdiction over the individually named Defendants in this matter should be precluded because the actions connecting them to Michigan were undertaken in an official rather than personal capacity. *Calder v. Jones,* 465 U.S. 783, 789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (employees' status does not somehow insulate them from jurisdiction. Each defendants' contact with the forum state must

be assessed individually); *Balance Dynamics Corporation v. Schmitt Industries,* 204 F.3d 683, 697 (6th Cir.2000) (the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants); *Chicago Blower Corp. v. Air Systems Associates, Inc.,* 623 F.Supp. 798, 800 (E.D.Mich.1985) (the court found that the individual defendants had purposefully availed themselves of Michigan business opportunities and declined to apply the fiduciary shield doctrine to insulate them from application of the Michigan long-arm statute).

Plaintiffs have the burden of demonstrating that this Court's exercise of personal jurisdiction over the individually named Board members is proper. Their proof consists of the following: (1) allegations in Second Amended Complaint that the individually named Defendants made "material decisions not to protect Interflora's rights in the INTERFLORA Mark;" (2) allegations of a failure to prohibit the Mark's unauthorized use; (3) allegations of a failure to prohibit themselves from usurping the Mark "for their own self interest and on behalf of Fleurop;" (4) allegations of a "failure to exploit the use of the INTERFLORA Mark on behalf of Interflora itself;" (5) allegations of "exploiting the INTERFLORA Mark for their own self interest by use of the INTERFLORA Mark by inclusion in domain names controlled by Fleurop;" (6) allegations that Interflora "is being operated for the benefit of the Individual Defendants and Fleurop and not in the best interests of Interflora and all of its shareholders;" and (7) documentation that each Board member accepts compensation in the form of checks drawn on a Michigan bank for the performance of service for a Michigan corporation. *(Plaintiffs' Second Amended Complaint, ¶¶ 43–44 & Plaintiffs' Re-*

*sponse Brief in Opposition to Defendants' Partial Motion to Dismiss Second Amended Complaint, Exhibit 1).*

Additionally, Plaintiffs argue that these Board members purposely availed themselves of the privilege of conducting business in Michigan by voluntarily agreeing to serve as a director of a Michigan corporation. Although Defendants have provided affidavits from the Board members denying any connection to Michigan, the standard requires that this Court review Plaintiffs' evidence in support of personal jurisdiction in the light most favorable to Plaintiffs and not to weigh the competing evidence.

The Court finds that Plaintiffs have met their burden, demonstrating that sufficient minimum contacts with Michigan have been established in accordance with the three part inquiry set forth above (the subject Defendants have purposely availed themselves of the privilege of conducting activities in Michigan); this cause of action arises from the Defendant Board members' activities in Michigan; and the subject Defendants' activities have a substantial enough connection with Michigan to make the exercise of jurisdiction over the defendant reasonable.

Accordingly, this Court's exercise of personal jurisdiction over the individually named Defendants is proper; and Defendants' request for dismissal pursuant to these grounds is denied.

### Declaratory Judgment

■ Defendants claim that since Plaintiffs' alleged claim has already ripened into a cause of action, seeking declaratory judgment at this juncture would serve no purpose; and, accordingly Count I of Plaintiffs' Second Amended Complaint requesting declaratory relief should be dismissed. *(Brief in Support of Defendant's Partial Motion to Dismiss Second Amended Complaint, pp. 13–15).* The Declaratory Judgment Act empowers the district court to entertain certain actions, but it does not compel it to exercise the jurisdiction thus granted to it. *See, 28 U.S.C. § 2201(a); Wilton v. Seven Falls Co.,* 515 U.S. 277, 282, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). The Federal Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of the appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration ...

*28 U.S.C. § 2201(a).* The Act provides only that courts "may" hear declaratory actions, rather than "shall" hear declaratory actions. The granting of a declaratory judgment rests in the sound discretion of the trial court. *Grand Trunk R. Co. v. Consol. R. Co.,* 746 F.2d 323, 325 (6th Cir.1984).

■ The Sixth Circuit applies the following criteria to determine whether it is appropriate for a district court to issue a declaratory ruling: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relationship in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *Id.* at 326. It follows that when neither of these results can be accomplished, the court should decline to render the declarations prayed. *Id.*

■ In assessing whether to exercise its discretion to accept jurisdiction in a declaratory judgment action, a district court considers five specific factors: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a

declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *Omaha Property & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 447–48 (6th Cir. 1991).

Although the declaratory judgment rule provides that "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in an appropriate case," the Court finds that a declaratory judgment would be redundant to the relief already sought for breach of contract. *MCR 2.605(C)* First, providing declaratory relief would not settle this matter because both parties concede that the subject of this dispute has existed for a period of years.[3] Therefore, there is nothing anticipatory about Plaintiffs' claim. Plaintiffs have already alleged damages and presumably will seek monetary and/or injunctive relief despite a declaratory ruling by this Court.

Second, no useful purpose would be served by clarifying the legal relations at issue for the above stated reason. Third, whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata" is not clear to the Court. However, in light of this Court's finding relative to the first two factors, it is not necessary for a decision to be made regarding Plaintiffs' motives in bringing a claim for declaratory relief. Fourth, use of a declaratory action would not increase the friction between our federal and state courts and improperly encroach on state jurisdiction. The Defendants in this matter are non-residents and have international status. Plaintiffs' trademark claim comes within federal jurisdiction. Finally, the Court finds that Plaintiffs have already

sought an alternative remedy that is better or more effective. Plaintiffs have filed a fourteen Count Second Amended Complaint, which includes monetary and injunctive requests for relief. Therefore, several alternative remedies have already been filed with this Court.

Accordingly, Defendants' request that Plaintiffs' claim for declaratory relief be dismissed is granted.

### Michigan Consumer Protection Act

■ The Michigan Consumer Protection Act (MPCA) prohibits certain "[u]nfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce." *M.C.L. § 445.903(1).* "Trade or commerce" is defined as:

> the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity.

*M.C.L. § 445.902(d).* The intent of the MCPA is "to protect consumers in their purchases of goods which are primarily used for personal, family or household purposes." *Noggles v. Battle Creek Wrecking, Inc.,* 153 Mich.App. 363, 367, 395 N.W.2d 322, 324 (1986). Defendants' Motion to Dismiss presents two issues under the MCPA: (1) whether Plaintiffs' complaint contains allegations that meet the "trade or commerce" requirement; and (2) whether Plaintiffs, as businesses, have standing to assert claims under the MCPA. *(Defendants' Partial Motion to Dismiss Second Amended Complaint, pg. 15).*

---

**3.** Defendants claim that Plaintiffs' cause of action arose in 1995. Plaintiffs contend that their claims did not arise until 1999. This case was filed in March 2001.

Defendants contend that Plaintiffs' claims do not satisfy the "trade or commerce" requirement because there is no allegation that Plaintiffs and Defendants engaged in trade or commerce with each other by providing or receiving "goods, property, or service primarily or personal, family, or household purposes."

In support of their argument, Defendants cite *Cosmetic Dermatology and Vein Centers of Downriver, P.C. v. New Faces Skin Care Centers, Ltd.*, 91 F.Supp.2d. 1045 (E.D.Mich.2000). In that case, the plaintiff, Cosmetic Dermatology and Vein Centers of Downriver, P.C., sued a competitor, Skin Care Specialists, P.C., and others, alleging claims of trademark infringement and violation of the MCPA. The court granted the defendants' motion for summary judgment on the MCPA claim because it found that the purchase of a business logo did not constitute a "purchase or transaction" involving goods or property " 'primarily for personal, family, or household purposes.' " *Id.* at 1060. Therefore, the court held that the parties never engaged in "trade or commerce" within the meaning of the statute. *See also, Robertson v. State Farm Fire & Casualty*, 890 F.Supp. 671, 673 (E.D.Mich. 1995) (plaintiffs' MCPA claim was dismissed because "the acts complained of [did] not involve the sale of 'goods, property, or service primarily for personnel, family or household purposes' ").

The *Cosmetic Dermatology* court disagreed with *Labatt v. Molson Breweries*, 853 F.Supp. 965 (E.D.Mich.1994), wherein the court allowed plaintiffs' MCPA claim against a business competitor to go forward. The *Labatt* court held that plaintiffs had standing as a business competitor to bring an MCPA action because it is:

[i]mplicit in the cases finding a right of action in non-consumers under the MCPA is the understanding that the intent of protecting consumers is well served by allowing suit to be brought by non-consumers who have a significant stake in the events ... If competitor suits are not allowed, the MCPA is unlikely to be enforced except in those instances where the Attorney General chooses to pursue an action (citation omitted).

*Labatt, supra*, 853 F.Supp. at 970. However, since the *Labatt* court did not consider or analyze the issue of whether plaintiffs satisfied the "trade and commerce" requirement apart from the issue of standing, the *Cosmetic Dermatology* court determined that in order for the "trade and commerce" requirement to be met, the purchase must involve goods, primarily used for "personal, family, or household" purposes.

Conversely, Plaintiffs rely upon *Action Auto Glass v. Auto Glass Specialists*, 134 F. Supp 2d. 897 (W.D.Mich.2001), the finding of which is *contra* to the reasoning in *Cosmetic Dermatology* as follows:

By its terms, the definition of "trade or commerce" focuses on "the conduct of a business providing [consumer] goods, property, or service," rather than upon the occurrence of a specific transaction between the plaintiff and the defendant. M.C.L. § 445.902(d). Such conduct includes "advertising, solicitation, offering for sale or rent, sale, lease, or distribution." *Id.* There is no requirement that consumer goods be sold or purchased in order to constitute "trade or commerce," although a sale of consumer goods or services is an example of conduct constituting "trade or commerce."

\* \* \* \* \* \*

A "person" includes "a natural person, corporation, trust, partnership, incorporated or unincorporated association, or other legal entity." M.C.L. § 445.902(c). While it is true that the legislature used the word "person" to describe who may

be a plaintiff as well as who may be a defendant, it is also true that had the legislature intended to allow only individuals to sue under the MCPA, it could have easily used the term "individual" to limit the potential plaintiffs under M.C.L. § 445.911(1) and (2). Because the word "person" as used in that section also includes corporations and other entities-businesses not engaging in consumer transactions-the Court concludes that business competitors have standing under the MCPA because it must presume that the legislature intended the meaning expressed in the statute. See *People v. Reynolds,* 240 Mich.App. 250, 253, 611 N.W.2d 316, 317 (2000) (per curiam). Furthermore, the result of allowing business competitors to maintain actions under the MCPA is consistent with the intended purpose of protecting consumers. In a case such as this, for example, where a competitor makes allegedly false statements about a competitor's product or business practices, the ultimate resulting harms to the consumer, who may be swayed into purchasing an inferior product or paying more for the same product. Under the facts alleged in this case, consumers may have been harmed by Defendant's allegedly false statements by paying more for goods or services. Therefore, Plaintiffs have standing to sue under the MCPA.

*Action Auto Glass v. Auto Glass Specialists,* 134 F. Supp 2d. 897, 901, 903 (W.D.Mich.2001).

The *Action Auto Glass* court reviewed *Labatt* and *Cosmetic Dermatology* and held that *Cosmetic Dermatology's* finding of the parameters of "trade and commerce" (purchase of personal, family and household items) "impermissibly narrows the scope of the statutory definition of 'trade and commerce.'" *Id.* a 901.

By its terms the definition of trade or commerce focuses on "the conduct of a business providing consumer goods, property or service" rather than upon the occurrence of a specific transaction between the plaintiff and the defendant … There is no requirement that consumer goods be sold or purchased in order to constitute "trade and commerce" although a sale of consumer goods or services is an example of conduct constituting "trade or commerce."

*Id., quoting, M.C.L. § 445.902(d)*

In this case, Plaintiffs and Defendants are not only business competitors in the sense that they are both vying for customers desiring floral arrangement and delivery services; they are also business entities which work in concert by providing florist association and delivery services to various parts of the country, without encroaching upon their respective territories. Plaintiffs and Defendants are in the business of providing consumer goods and services, in the form of floral arrangements and delivery options, for household, personal, family and business purposes.

Plaintiffs' claim arises from their assertion that Defendants began operating an internet website using the domain names *www.interflora.com* and *www.fleurop-interflora.com,* the establishment of which was done without the consent or permission of Plaintiffs. *(Plaintiffs' Second Amended Complaint, ¶ 33).* The establishment of the internet website allegedly incorporates the Mark as part of the domain name, which apparently allows worldwide access to each of these internet websites without territorial restriction. *(Plaintiffs' Second Amended Complaint, ¶¶ 34–35).*

The allegation relative to Plaintiffs' claim under the MPCA is that the business in which the parties are engaged involve "trade or commerce;" and Defendants' actions constituted and comprised violations of the MPCA. The Court finds that Plaintiffs' claim in conjunction with the business

in which Plaintiffs and Defendants are involved arise as a result of their advertising and offering for sale consumer goods and services of a personal nature.

Accordingly, this Court finds the broader reading of the MPCA as espoused in *Action Auto Glass* is more in line with our continually changing and modernized society and with the specific facts of this case. Defendants' request to dismiss. Plaintiffs' MPCA claim is denied.

### Tortious Interference With Advantageous Business Relations

■■■ Defendants assert that Plaintiffs have failed to state a tortious interference claim as a matter of law as to both the corporate and individually named Defendants. The elements of a claim for tortious interference with a contract or advantageous business relationship or expectancy are as follows: (1) the plaintiff's contract or business relationship or expectancy must be with a third party; (2) the defendant must have knowledge of the contract or the business relationship or expectancy; (3) there must be intentional and improper interference by the defendant, inducing or causing a breach, disruption, or termination of the contract or the business relationship or expectancy; and (4) there must be resultant damage to the party whose contract or business relationship or expectancy has been breached, disrupted or terminated. *See, Jim–Bob, Inc. v. Mehling*, 178 Mich.App. 71, 443 N.W.2d 451 (1989).

Based upon this Court's review of ¶¶ 24, 34, 40, 41, and 92–97 of Plaintiffs' Second Amended Complaint, the Court finds that Plaintiffs have properly pled a viable claim of tortious interference with an advantageous relationship against all of the named Defendants. However, for the statute of limitation reasons set forth below, Defendants' request that this claim be dismissed is granted.

### Inducement to Breach Fiduciary Duties

■■■ . Defendants claim that as a matter of law, inducement to breach fiduciary duties is not a cognizable cause of action in Michigan and therefore should be dismissed. Defendants cite *Monohon v. Smith and Loveless Division, Union Tank Car Company*, 343 F.Supp. 810, 811–813 (E.D.Mich.1972) and *Comerica Bank v. TDJ, Inc.*, 2000 WL 33422836 (Mich.App.) in support of their position. In response, Plaintiffs cite *L.A. Young Spring & Wire Corp. v. Falls*, 307 Mich. 69, 106–107, 11 N.W.2d 329 (1943) in support of their contention that such a cause of action is viable in Michigan. Case law cited by Defendants specifically states that there are no Michigan cases which support the existence of an inducement to breach fiduciary duties claim. Authority cited by Plaintiffs in support of the viability of this claim is not persuasive. Although the *Falls* case discusses allegations that certain parties were induced to commit wrongdoing, there was no "inducement to breach fiduciary duty" claim to be resolved. *Falls* was a chancery action, with the parties seeking to recover for the alleged breach of duty and wrongdoing of the individual defendants (not the inducement to breach).

The Court finds that Michigan does not recognize Plaintiffs' claim for inducement to breach fiduciary duties. For these reasons and those set forth below, Plaintiffs' claim for inducement to breach fiduciary duties is dismissed.

### Statute of Limitations

*Breach of Fiduciary Duties, Diversion of Corporate Opportunity, Interference with FTD's Advantageous Business Relations, Inducement to Breach Fiduciary Duties*

*Position of the Parties*

Defendants claim that each of the above named causes of action are barred by the

statute of limitations and should be dismissed. Defendants' argument is two-fold. First, there are no references to any timelines in Plaintiffs' Second Amended Complaint. Instead, a self-serving date of August 1999 is stated in Plaintiffs' responsive pleadings as the time at which *all* fourteen counts of liability substantiating Plaintiffs' cause of action arose. *(Plaintiffs' Response Brief in Opposition to Defendants' Partial Motion to Dismiss the Second Amended Complaint, pg. 32).*

Second, Defendants attached to their Motion to Dismiss two affidavits, one from the general manager of the entity Defendants, Mark Schmid, and the other from a member of the Board of Directors of Interflora, Inc., Walter Gossi. *(Brief in Support of Defendants' Partial Motion to Dismiss Second Amended Complaint, Exhibits C & G).* Each affiant states that the subject website was established in 1995 and that Plaintiffs had notice of its operation at that time. *Id.* Based on these affidavits, Defendant asserts that the statute of limitations bars the above named causes of action since the initial Complaint was not filed until March 2001.

Plaintiffs' response is three-fold: "(1) The Complaint says "nothing" about when various acts occurred; (2) The affidavits filed in support of the dismissal of these claims are not entitled to any weight; and (3) Plaintiffs' causes of action arise out of a 1999 Board meeting when a majority of the Interflora directors voted in favor of operating the Websites—not the actual establishment of the Websites in 1995." *(Reply Brief in Support of Defendants' Partial Motion to Dismiss, pg. 8, citing, Plaintiffs' Response Brief in Opposition to Defendants' Partial Motion to Dismiss the Second Amended Complaint, pp. 30–31).*

The Court finds that Plaintiffs' arguments in opposition to Defendants' statute of limitations affirmative defense are unpersuasive. Plaintiffs' claims of Breach of Fiduciary Duties, Diversion of Corporate Opportunity, Interference with FTD's Advantageous Business Relations, and Inducement to Breach Fiduciary Duties are time barred.

*Burden of Proof & Sufficiency of Evidence*

 As previously stated, a party who moves for summary judgment "bears the initial burden of showing the absence of a genuine issue of material fact." *Johnson v. United States Postal Serv.,* 64 F.3d 233, 236 (6th Cir.1995). Furthermore, Defendants have the burden of proof on all affirmative defenses, such as the statute of limitations. *See, Campbell v. Grand Trunk W. R.R. Co.,* 238 F.3d 772, 775 (6th Cir.2001); *see also, Anderson, supra,* 477 U.S. at 252, 106 S.Ct. 2505 ("the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."). If Defendants fail to meet their burden of proof, Plaintiffs have no obligation to proffer any additional evidence in order to rebut the statute of limitations defense. *See, Fonseca v. Consolidated Rail Corp.* 246 F.3d 585, 591–92 (6th Cir.2001). However, the "movant is not always required to come forward with affidavits or other evidence to obtain summary judgment; once the movant points out an absence of proof on an essential element of the nonmovant's case, the burden shifts to the nonmovant to provide evidence to the contrary." *Hall v. Bellmon,* 935 F.2d 1106, 1112 (10th Cir. 1991); *see, Celotex v. Catrett, supra,* 477 U.S. at 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

In this case, Defendants have submitted affidavit evidence, cited above, to support their position that the statute of limitations period has expired as to the above referenced claims. Defendants have also point-

ed to "an absence of proof on an essential element of the nonmovant's case" which is Plaintiffs' failure to indicate in their Complaint an accrual date for their claims against Defendants.

■■■■ "Under Michigan law, whether a plaintiff presented sufficient evidence to show that a cause of action accrued within the statute of limitations is a question of law." *DXS, Inc. v. Siemens Medical Systems, Inc.*, 100 F.3d 462, 472–73 (6th Cir. 1996). The date of accrual of a cause of action for statute of limitations purposes is a question of fact for the jury. *Waltzer v. Transidyne Gen. Corp.*, 697 F.2d 130, 133 (6th Cir.1983). "In addressing this question, a Court should determine not 'merely whether there is literally no evidence,'" but whether there is competent evidence showing, or from which a reasonable inference may be drawn, that the improper conduct occurred within the statute of limitations. *DXS, supra,* 100 F.3d at 472–73 (6th Cir.1996). Affidavits or other evidence offered by a nonmovant must create a genuine issue for trial; viewing the evidence in the light most favorable to the nonmovant, it is not enough that the evidence be "merely colorable" or anything short of "significantly probative." *Anderson, supra,* 477 U.S. at 249–50, 106 S.Ct. 2505. This is because when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *quoting, First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

*Application of Law to the Facts*

■■■ As previously stated, Defendants have the burden of presenting evidence in support of their affirmative defense of statutory bar. The Court finds, as a matter of law, that Defendants have provided sufficient evidence to show that Plaintiffs' cause of action, as to the above stated counts of liability, did not accrue within the statute of limitation period. Accordingly, Defendants have met their burden of proof.

The affidavit testimony of Defendant Gossi and Mark Schmidt indicate that the websites were established in 1995. *(Brief in Support of Defendants' Partial Motion to Dismiss Second Amended Complaint, Exhibits C & G).* Mark Schmidt's affidavit states, in part, that "[r]egular and consistent notice, information updates of the creation, status and operation of the *www.interflora.com* and *www.fleurop-interflora.com* websites were given to Florist Transworld Delivery, inc., Interflora (FTDA) British and Interflora, Inc. by Fleurop and EBC representative beginning September 1995, two months before the establishment of the websites, and through 2001." *(Id., Exhibit G, ¶ 4).* Defendant Gossi's affidavit testimony states, in part, that "[a]t a September 1995 meeting of the International Technical Advisory Committee of Interflora, the Dutch Unit representative of Fleurop disclosed fully to the Interflora, Inc. representatives information about the internet site being developed with the name interflora.com." *(Id., Exhibit C, ¶ 9).*

Plaintiffs state in their responsive pleadings that they had no knowledge of how the the INTERFLORA Mark would be used until August 1999. *(Plaintiffs' Response Brief in Opposition to Defendants' Partial Motion to Dismiss the Second Amended Complaint, pg. 32).* However, Plaintiffs have not provided the Court with any evidence substantiating that fact. The Court is cognizant, as stated above, that the date of accrual of a claim, for statute of limitations purposes, is a question of fact for the jury. However, in order for the

issue to get to the jury, the Court must be presented with "competent evidence showing, or from which a reasonable inference may be drawn, that the improper conduct occurred within the statute of limitations." *DXS, supra,* 100 F.3d at 472–73 (6th Cir. 1996). Plaintiffs have failed to provide any evidence from which this Court can make a determination that the statute of limitation issue should be decided by a jury.

*Plaintiffs' Arguments in Support of Allowing These Claims to Survive the Statutory Bar*

▆ Briefly, the Court will address Plaintiffs' three arguments in opposition to Defendants' contention and ostensibly to this Court's ruling. First, Plaintiffs claim that since "nothing" was stated in the Complaint about when various acts occurred, the cause of action cannot be time barred. The Court disagrees.

▆ The "omission from the complaint of any reference to the dates of the events alleged ... strongly suggests that the plaintiffs and their counsel were aware of the statute of limitation problem from the outset and attempted to hide it." *Freeman v. Bianco,* 2003 WL 179777, *5 (S.D.N.Y.2003). However, the omission of the accrual date in the complaint does not equate with the dismissal of the case on statute of limitations grounds. If the date is omitted from the complaint, which would reveal the date from which the statutory period would begin to run, the plaintiff can supply that fact by an affidavit. *Tregenza v. Great American Communications Co.,* 12 F.3d 717, 718 (7th Cir.1993). However, in this case Plaintiffs failed to make such a submission. Plaintiffs filed their initial Complaint on March 9, 2001 and made two amendments since that time. Defendants filed their Partial Motion to Dismiss the Second Amended Complaint on July 10, 2002; and the matter was heard on September 17, 2002. Plaintiffs had a year and a half plus the time period during which

the disposition of Defendants'. Motion has been pending, to sufficiently allege or otherwise support its position that the subject claims are within the statute of limitations period. Additionally, it is telling to the Court that Plaintiffs have amended their Complaint twice and the accrual date of their cause of action remains unmentioned in the text of their Complaints. The fact that Plaintiffs allege "nothing" about the accrual date does not salvage Plaintiffs' claims.

▆ Second, Plaintiffs assert that this Court should disregard the affidavit testimony submitted by Defendants because it falls outside of the four corners of Plaintiffs' Complaint; and Defendants' motion was brought pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(6). The Court addresses this issue in the Standard of Review portion of this Opinion. Both parties submitted documentation for the Court to consider in addition to the Complaint that was filed in this matter. As explained above, the Court has taken into consideration all evidence submitted for review and has ruled upon Defendants' Motion pursuant to Fed.R.Civ.P. 56(c) since the Court's review extended beyond the four corners of Plaintiffs' Complaint.

Finally, Plaintiffs contend that their cause of action relative to the subject claims arose out of a 1999 Board meeting. As previously stated, the Court finds this argument unpersuasive because the record is devoid of any evidence to support this conclusory statement. *Oates v. Englund, See,* 194 F.3d 1321, (Table) (unpublished), 1999 WL 786752 *1 (10th Cir.1999).;*see also, Hall, supra,* 935 F.2d at 1111 (10th Cir.1991). Plaintiffs have offered nothing to support their conclusory and self-serving allegation that their cause of action accrued in 1999 and is therefore insufficient to create a genuine issue of fact.

Based upon the facts before the Court and the applicable law, the Court finds that Plaintiffs have not raised a genuine issue of material fact regarding this issue. The Court further finds that Plaintiffs' arguments in opposition to Defendants' statute of limitations affirmative defense are unpersuasive: Plaintiffs' claims of Breach of Fiduciary Duties, Diversion of Corporate Opportunity, Interference with FTD's Advantageous Business Relations, and Inducement to Breach Fiduciary Duties are time barred.

### CONCLUSION

Accordingly, Defendants' Motion is **GRANTED** in part and **DENIED** in part. Defendants' Partial Motion to Dismiss Count I—Request for Declaratory Relief; Count IX—Interference with FTD's Advantageous Business Relations; Count XI—Inducement to Breach Fiduciary Duties; Count XII—Breach of Fiduciary Duties; Count XIII—Diversion of Corporate Opportunity of Plaintiffs' Second Amended Complaint is **GRANTED**. Defendants' Partial Motion to Dismiss Count V (Michigan Consumer Protection Act Claim), and Count XIV(Breach of Contract) of Plaintiffs Second Amended Complaint is **DENIED**.

IT IS ORDERED that Defendants' Partial Motion to Dismiss Second Amended Complaint [**Docket No: 21–1**] is **GRANTED** in part and **DENIED** in part.

IT IS FURTHER ORDERED that Defendants' Motion to Commence Discovery [**Docket No. 34–1**] is **MOOT**.

IT IS FURTHER ORDERED that the parties appear for a Scheduling Conference on May 12, 2003 at 3:30.